**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

CLYDE J. SMITH,

               Plaintiff,

v.                                CIVIL ACTION NO.   3:14-12507

21st CENTURY NATURAL FUELS, LLC,
a Pennsylvania Limited Liability Company;
21st CENTURY NATURAL FUELS, LLC,
an Ohio Limited Liability Company;
ALTERNATIVE FUEL SOLUTIONS OF
PENNSYLVANIA LLC;
JAMES J. O'DONNELL;
DENNIS J. O'DONNELL; and
DEBORAH A. VASENDA,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are cross motions for summary judgment brought by Plaintiff Clyde Smith and

Defendants 21st Century Natural Fuels, LLC, an Ohio Limited Liability Company ("21st

Century"); Alternative Fuel Solutions of Pennsylvania LLC; James J. O'Donnell; Dennis J.

O'Donnell; and Deborah Vasenda (collectively "Defendants"). Pl.'s Mot. for Summ. J., ECF No.

39; Defs.' Mot. for Summ. J., ECF No. 41. Mr. Smith seeks summary judgment in his favor on

Complaint counts I (restitution), II (unjust enrichment), and IV (individual member liability) and

Counterclaim counts I (declaration regarding contract formation) and II (breach of fiduciary duty).

Defendants seek summary judgment on the issue of federal subject matter jurisdiction previously

considered by this Court when it denied Defendants' motion to dismiss for lack of subject matter

jurisdiction, *see Smith v. 21st Century Nat. Fuels, LLC*, No. 14-12507, 2014 WL 4387569, at *1

(S.D.W. Va. Sept. 4, 2014), ECF No. 22. For the following reasons, the Court DENIES Plaintiff's motion for summary judgment on Complaint counts I, II, and IV and Counterclaim counts I and II. Treating Defendants' motion for summary judgment as a motion to dismiss for lack of subject matter jurisdiction, the Court GRANTS Defendants' motion and DISMISSES without prejudice Plaintiff's Complaint and Defendants' Counterclaim.

## I.      Background

Mr. Smith's action arises from his attempt to acquire an ownership interest in 21st Century. 21st Century is a limited liability company (LLC) in the business of selling and installing conversion kits that permit automotive vehicles to run on natural gas. Defs.' Memo. in Supp. of Mot. for Summ. J. 2, ECF No. 42; Affidavit of Deborah Vasenda ¶¶ 3, 5, ECF No. 41-1 [hereinafter Aff.]. Prior to October 2013, Mr. Smith, through his business West Virginia CNG, LLC, installed natural gas conversion kits sold to him by 21st Century. Aff. ¶ 7. This arrangement also required 21st Century to render technical assistance and advice to Mr. Smith. *Id.*

Upon first meeting 21st Century's representatives, Mr. Smith expressed a desire to buy an interest in 21st Century. *See id.* ¶ 8. But the representatives were reluctant to sell him an interest at that time because 21st Century, then a Pennsylvania LLC, was planning to re-organize as an Ohio LLC. *Id.*

At some point thereafter, Mr. Smith obtained an order for twenty truck conversions from the West Virginia Department of Transportation ("WVDOT"). *See* Aff. ¶ 9; Defs.' Memo. in Supp. of Mot. for Summ. J. at 3; Deposition of Clyde Smith 14–16, 20–24, ECF No. 43 [hereinafter Smith Depo.]. Mr. Smith was ill-equipped to complete these installations, and so he acquired assistance from 21st Century's subsidiary, Defendant Alternative Fuel Solutions of Pennsylvania ("Alternative Fuels"). Aff. ¶ 9; Smith Depo. at 20–25. Alternative Fuels sold Mr. Smith the twenty

kits at a price discounted from the wholesale rate, and it provided him technical assistance, garage

upgrades, and labor to install the kits. Smith Depo. at 20–25. During this collaboration, Mr. Smith

again expressed interest in buying into 21st Century. *Id.* at 25–26.

In October 2013—after this series of conversations about his purchasing an interest in the

company—21st Century prepared and sent by e-mail to Mr. Smith a proposed purchase agreement

setting forth the terms upon which it would be willing to sell him a membership. Smith Depo. at

33–36; Aff. ¶ 12; Compl. ¶ 24. Prior to receiving the agreement, Mr. Smith understood that 21st

Century would create the agreement and send it to him. Smith Depo. at 34–36. The purchase

agreement document was unsigned when sent to Mr. Smith. *See* Purchase Agreement, Ex. A, ECF

No. 39-1 [hereinafter Purchase Agreement]. Additionally, in the e-mail accompanying the

purchase agreement, 21st Century assured Mr. Smith it was the agreement they had previously

spoken about, and 21st Century representative Deborah Vasenda told Mr. Smith "[w]e'll sign, after

you sign." E-mail from Deborah Vasenda to Clyde Smith (Oct. 30, 2013), Ex. C, ECF No. 39-3.

The purchase agreement offered a 2.5% interest in 21st Century in exchange for what

amounted to $250,000 from Mr. Smith. Smith Depo. at 36–37; Purchase Agreement 1–2; Aff. ¶

15–16. Additionally, 21st Century agreed to forgo its costs in assisting Mr. Smith with the

WVDOT kit installations and allow Mr. Smith to keep all profits from that job. Smith Depo. at

36–37; Aff. ¶ 15–16. at 4. Paragraph 16 of the purchase agreement provides:

> [Mr.] Smith will receive paperwork showing he is an owner of 2.5%
> of 21st Century . . . after the wire of $200,000 posts. 21st Century .
> . . will start the paperwork and provide [Mr.] Smith with all the
> necessary paperwork from the Secretary of State of Ohio, within 30
> working days of this document.

Purchase Agreement ¶ 16. The purchase agreement does not specify in more detail what this paper

work is or that time was of the essence in providing it.

-3-

On October 31, 2013, Mr. Smith signed the purchase agreement and returned it to 21st Century without making other changes to the document. Smith Depo. at 37–38; Aff. ¶ 18. In response, 21st Century provided Mr. Smith with wire instructions, and on November 1, 2013, Mr. Smith wired $200,000 to 21st Century and forgave $50,000 that 21st Century owed him at the time. Smith Depo. at 40–41; Aff. ¶¶ 18–20; Compl. ¶¶ 27–29. On November 21, 2013, 21st Century filed documents with the Ohio Secretary of State's Office to re-organize as an Ohio LLC. The filed documents consist of 21st Century's Articles of Organization as a Domestic LLC. Aff. ¶ 21; Articles of Organization, Ex. B, ECF No. 41-1. Nowhere on the Articles of Organization does it call for the applicant to list all of the proposed LLC's shareholders or members, but it does call for signatures of up to three members, managers, or representatives of the LLC. *See id.* at 4. Mr. Smith did not sign the Articles of Organization. According to Defendants, the Ohio Secretary of State's Office does not prepare share certificates for LLCs. Aff. ¶ 23. On November 23, 2013, 21st Century prepared—but did not deliver to Mr. Smith—a share certificate evincing Mr. Smith's 2.5% ownership in 21st Century. Aff. ¶ 21.

On February 7, 2014, Mr. Smith, having not received any paperwork showing he owned an interest in 21st Century, sent a letter, by counsel, to 21st Century asserting that the purchase agreement was a mere offer which 21st Century had failed to accept, and he attempted to "rescind"[1] the offer. *See* ECF No. 39–4. Defendants responded to Mr. Smith by asserting their delivery of the purchase agreement to Mr. Smith was the relevant offer, and that Mr. Smith accepted Defendants' offer by returning the agreement with his signature and immediately conveying $200,000 to 21st

---

[1] The Court notes that Mr. Smith, pursuant to legal theories he has presented, attempted to *revoke* the putative offer he had previously made in returning the signed purchase agreement, not rescind it. Rescinding the purchase agreement would imply that Mr. Smith formed a contract with 21st Century, something he adamantly denies.

Century. *See* ECF No. 39–5. On February 17, 2014, 21st Century sent Mr. Smith the certificate it allegedly prepared in November 2013. *Id.* at 2.

On March 17, 2014, Mr. Smith filed a complaint against Defendants setting forth counts for restitution, unjust enrichment, fraud, and individual shareholder liability, and demanding return of $250,000 and additional damages as warranted. ECF No. 1. Subsequently, Defendants moved to dismiss this action for lack of subject matter jurisdiction, arguing that complete diversity between the parties was lacking. ECF No. 13. The citizenship of the parties at the time of filing is as follows:

1.      Plaintiff, Mr. Smith, is a citizen of West Virginia.

2.      Defendant Mr. James O'Donnell is a citizen of Ohio.

3.      Defendant Mr. Dennis O'Donnell is a citizen of Pennsylvania.

4.      Defendant Ms. Vasenda is a citizen of Ohio.

5.      Defendants 21st Century and Alternative Fuel Solutions of Pennsylvania, LLC, for purposes of diversity jurisdiction, are each citizens of the states where each member is a citizen.

ECF No. 1. The Court denied Defendants' motion to dismiss for lack of subject matter jurisdiction, finding that the jurisdictional issue depended upon a substantive issue, namely whether Mr. Smith formed a contract with 21st Century to purchase membership in 21st Century. *21st Century Nat. Fuels, LLC*, 2014 WL 4387569, at *1. If the two formed a contract, 21st Century would have become a citizen of West Virginia by virtue of Mr. Smith's West Virginia citizenship, thereby destroying complete diversity and this Court's jurisdiction over the case. *Id.* at 2. In the order denying Defendants' motion, the Court noted it would dismiss the action if, after discovery, it became apparent the Court lacked jurisdiction. *Id* at 3.

After completing discovery, the Parties filed cross motions for summary judgment. Mr. Smith seeks summary judgment on his claims for restitution, unjust enrichment, and individual liability for 21st Century's members. Additionally, Mr. Smith asks for summary judgment on the counts in Defendants' Counterclaim, specifically their request for a declaration that the Parties entered into a purchasing contract and their claim that Mr. Smith breached his fiduciary duty to 21st Century. In Defendants' motion for summary judgment, they re-raise the issue of federal subject matter jurisdiction previously considered by this Court.

## II.      Legal Standard

To obtain summary judgment, the moving party must show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Satisfying the burden of proof requires more than a mere "scintilla of evidence." *Anderson*, 477 U.S. at 252. Summary judgment will be inappropriate in a contract dispute when there is a factual

dispute regarding the existence of a valid and binding agreement. 10B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2730.1 (3d ed. 1998); *see also Kerns v. Range Res.-Appalachia, LLC*, No. 10-23, 2011 WL 197908, at *3 (N.D.W. Va. Jan. 18, 2011) ("Generally, the existence of a contract is a question of fact for the jury.") (citing and quoting *Ruckdeschel v. Falcon Drilling Co.*, 693 S.E.2d 815, 820 (W. Va. 2010)).

In addressing the substantive issues each motion presents, e.g., non-jurisdictional issues, the Court will apply West Virginia law. A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) *cert. denied*, 134 S. Ct. 986, 187 L. Ed. 2d 783 (2014) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Applying West Virginia's choice of law rules to this case, West Virginia substantive law is applicable because almost all events giving rise to this cause of action transpired within West Virginia. Restatement (Second) of Conflict of Laws § 221 (1971) (Restitution); *id.* at § 148 (Fraud and Misrepresentation).[2]

### III.    Discussion

Having explained the standard and applicable law for deciding these motions for summary judgment, the Court will turn to the parties' arguments. First, the Court must determine whether it has jurisdiction over this action. So, this discussion begins with Defendants' motion for summary judgment based on a lack of subject matter jurisdiction. Finding the jurisdictional matter must be resolved after proceeding to the merits of this case, the Court then considers Mr. Smith's motion for summary judgment on claims for restitution, unjust enrichment, and Counterclaim count I, which seeks a declaration regarding whether the Parties formed a contract whereby Mr. Smith

---

[2] Although the West Virginia Supreme Court of Appeals has not specifically applied Sections 221 or 148, it has looked to the Restatement (Second) of Conflict of Laws in deciding choice of laws questions. *See, e.g.*, *Gen. Elec. Co. v. Keyser*, 275 S.E.2d 289, 293 (W. Va. 1981).

became a member of 21st Century. Considering the merits, the Court concludes Mr. Smith entered

into a contract to join 21st Century, which destroys the Court's diversity jurisdiction over this

action.

A. *Defendants' motion for summary judgment based on lack of subject matter jurisdiction*

Defendants ask for summary judgment in their favor because, according to Defendants, the

Court lacks subject matter jurisdiction. "[S]ummary judgment is an inappropriate vehicle for

raising a question concerning the courts subject-matter jurisdiction . . . [and therefore] the general

rule is that it is improper for a district court to enter a judgment under Rule 56 for defendant[s]

because of a lack of jurisdiction." 10B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. &*

*Proc.* § 2317 (3d ed. 1998) (citing *Capitol Leasing Co. v. Federal Deposit Ins. Corp.*, 999 F.2d

188 (7th Cir. 1993)).[3] Therefore, a court presented with a motion for summary judgment based on

a lack of subject matter jurisdiction should treat the motion as one under 12(b)(1) for dismissal

due to a lack of subject matter jurisdiction, under which courts may consider evidence outside the

pleadings without converting the motion into one for summary judgment, *see 21st Century Nat.*

*Fuels, LLC*, 2014 WL 4387569, at *2 (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th

Cir. 1999)).[4] Accordingly, the Court treats Defendants' motion for summary judgment as a

---

[3] The idea that a court could grant summary judgment because the court lacks subject matter
jurisdiction is paradoxical. *See Robinson v. Union Pac. R.R.*, 245 F.3d 1188, 1191 (10th Cir.
2001) ("Seeking summary judgment on a jurisdictional issue is the equivalent of asking a court
to hold that because it has no jurisdiction the plaintiff has lost on the merits.") (quoting *State
Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 518 n. 8 (10th Cir. 1994)). A motion for
summary judgment seeks a judgment on the merits. *Heyward v. Pub. Hous. Admin.*, 238 F.2d
689, 694 (5th Cir. 1956) (observing a "motion for summary judgment applies to the merits of a
claim"); Wright & Miller, *supra* at § 2317 ("The movant under Rule 56 is asserting that on the
basis of the record as it then exists, there is no genuine issue as to any material fact so that the
movant is entitled to a judgment *on the merits* as a matter of law.") (emphasis supplied). But if
the court lacks subject matter jurisdiction, it is without power to enter judgment on the merits
and must dismiss the action without prejudice. Wright & Miller, *supra* at § 2317.
[4] The burden of proving subject matter jurisdiction rests on the party invoking federal jurisdiction

renewed motion to dismiss for want of subject matter jurisdiction under 12(b)(1).

In deciding a 12(b)(1) motion to dismiss where the "jurisdictional facts are intertwined with the facts central to the merits of the dispute," dismissal based on a lack of jurisdiction becomes improper, and the factual dispute is "appropriately resolved only by a proceeding on the merits."[5] *Adams*, 697 F.2d at 1219; *see also Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009); *CBX Techs., Inc. v. GCC Techs., LLC*, 457 F. App'x 299, 301 (4th Cir. 2011) (unpublished). In such case, the general rule is the district court should assume jurisdiction and move on to the merits of the case. *Kerns*, 585 F.3d at 195 (4th Cir. 2009) (*citing U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009); *Adams*, 697 F.2d at 1220); *id.* at n.6 (citing *Rivanna Trawlers Unltd. v. Thompson Trawlers, Inc.*, 840 F.2d 236, 239 (4th Cir. 1988)). Accordingly, the Court will assume jurisdiction, proceed to the merits of Mr. Smith's motion for summary judgment, and after resolving the substantive issue of contract formation, decide the jurisdictional issue.[6]

B. *Plaintiff's motion for summary judgment*

Mr. Smith seeks summary judgment on his claims for restitution (Count I), unjust enrichment (Count II), liability of 21st Century's individual members (Count IV), and on the Counterclaim's request for a declaration that Mr. Smith and 21st Century formed a contract (Count I) and breach of fiduciary duty claim (Count II). Because the issue of contract formation is a

---

and must be established by preponderance of the evidence. *Roche v. Lincoln Prop. Co.*, 373 F.3d 610, 616 (4th Cir. 2004) *rev'd on other grounds by*, 546 U.S. 81 (2005); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

[5] In a previous order, the Court held that determination of the jurisdictional issue depends on a substantive issue, namely whether Mr. Smith formed a contract with 21st Century. *See 21st Century*, 2014 WL 4387569, at *1.

[6] Defendants ask only for summary judgment on the jurisdictional issue, not the substantive contract formation issue. Although both issues are the same—whether Mr. Smith formed a contract with 21st Century—the Court will not grant an unrequested judgment.

threshold matter for Mr. Smith's claims for restitution and unjust enrichment, the Court begins there.[7]

Did Mr. Smith and 21st Century enter into a contract through which Mr. Smith purchased membership in 21st Century? In their Memorandum in Support, Defendants point out that since the Court denied their 12(b)(1) motion to dismiss, wherein Defendants argued Mr. Smith and 21st Century formed such a contract, there have been several factual developments indicating a membership purchasing contract was formed. Defendants offer Mr. Smith's deposition testimony and an Affidavit of Defendant Deborah Vasenda, a managing member of 21st Century, to prove the contract's consummation. Defs.' Memo. in Support of Mot. for Summ. J. at 2.[8] According to

---

[7] If a purchasing contract between the Parties exists, Mr. Smith's claims for restitution (Count I) and unjust enrichment (Count II) fail as a matter of law. If a contract exists between two parties, a party may not sue under a theory of restitution for the other's breach of contract; instead, the party's remedy lies in breach of contract. *See Realmark Developments, Inc. v. Ranson*, 588 S.E.2d 150, 153 (W. Va. 2003) (explaining that unjust enrichment, sometimes referred to as restitution, is a contract implied in law or a quasi-contract); *Case v. Shepherd*, 84 S.E.2d 140, 144 (W. Va. 1954) (express and implied contract cannot co-exist). On that same note, when there is a valid contract governing a transaction, a party may not sue for unjust enrichment related to that transaction. *See Ash v. Allstate Ins. Co.*, No. 12-1533, 2013 WL 5676774, at *5 (W. Va. Oct. 18, 2013) (unpublished); *Case*, 84 S.E.2d at 144 ("An express contract and an implied contract [i.e., a claim for unjust enrichment], relating to the same subject matter, can not [sic] co-exist."); Syl. Pt. 3, *Rosenbaum v. Price Const. Co.*, 184 S.E. 261 (W. Va. 1936) ("An implied contract and an express one covering the identical subject-matter cannot exist at the same time. If the latter exists, the former is precluded."); *see also Holland v. Cline Bros. Min. Co.*, 877 F. Supp. 308, 316 (S.D.W. Va. 1995) (citation omitted). Here, if the Parties formed a contract, Smith's remedy against Defendants lies in contract theory, not a claim for restitution or unjust enrichment. *Case*, 84 S.E.2d at 144; *Prior Oil Well Drilling Co. v. David A. Waldron & Associates, Inc.*, 601 F. Supp. 778, 779 (S.D.W. Va. 1985) (citing Restatement (Second) of Contracts § 373 (1981), comment A) ("The restitution remedy is an *alternative* to the enforcement of the contract")).

[8] Ms. Vasenda's affidavit indicates that after November 1, 2013, 21st Century treated Mr. Smith as an LLC member. Defs.' Mot. for Summ. J., Ex. C, ECF No. 41-1 [hereinafter Aff.]. In her affidavit, Ms. Vasenda says that between November 2013 and February 2014, 21st Century treated Mr. Smith as a member and recognized his ownership interest, never questioned his interest, and never took any action inconsistent with their recognition of his interest. Aff. at 3. Additionally, 21st Century made Mr. Smith privy to confidential information and held confidential discussions with him regarding the company. Mr. Smith responds that he was privy to this information and part of these discussions prior to November 2013. Pl.'s Resp. to Defs.' Mot. for Summ. J. 4–5,

-10-

Defendants, Mr. Smith's deposition and Ms. Vasenda's Affidavit establish as a matter of law that 21st Century made an offer when they sent Mr. Smith the proposed purchase agreement, and that Mr. Smith's signing and returning the purchase agreement constituted acceptance, resulting in contract formation. In the alternative, Defendants assert that even if Mr. Smith's returning the signed purchase agreement was the offer in this case, which is Mr. Smith's contention, acceptance by performance took place when 21st Century acted according to the terms of the purchase agreement. The Court considers each of Defendants' contract formation theories in turn.

1. **Defendants did not make an offer by sending an unsigned purchase agreement with an instruction that they would sign after Plaintiff**

First, a reasonable juror could find Defendants' proposed purchase agreement, unsigned and sent with a caveat, was not an offer. The Restatement defines an offer as a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts, § 24 (1981); *see also Verizon W. Va., Inc. v. W. Va. Bureau of Employment Programs, Workers' Comp. Div.*, 586 S.E.2d 170, 207 (W. Va. 2003). Additionally, "[a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." Restatement (Second) of Contracts, § 26 (Am. Law Inst. 1981). "'Reason to know' depends not only on the words or other conduct, but also on the circumstances, including previous communications of the parties and the usages of their community or line of business." *Id.* at comment a. The Restatement Section 26 comments further explain:

> A standard method of making an offer is to submit to the offeree a
> written agreement *signed by the offeror* and to invite the offeree to

ECF No. 44-1 (citing and quoting Deposition of James O'Donnell at 43–44, ECF No. 44-1). The Court considers Ms. Vasenda's affidavit in a light most favorable to Mr. Smith while analyzing the issue of contract formation.

> sign on a line provided for that purpose. *See* § 27. But the signature [of the offeror] even in such a case is not conclusive if the other party has reason to know that no offer is intended. More common is the use of promissory expressions or words of assent in unsigned documents or letters where the document is intended not as an offer but only as a step in the preliminary negotiation of terms . . . Reason to know that such is the intention may exist even though the document on its face seems to be clear and unambiguous.

*Id.* at comment e (emphasis supplied).

In this case, both Parties agree that 21st Century sent the proposed purchase agreement to Mr. Smith unsigned and with the caveat, "We'll sign after you."[9] Ex. C, ECF No 39-3. According to Mr. Smith, under these circumstances a reasonable person would understand that 21st Century did not intend to conclude the bargain until after it made a further manifestation of assent, namely 21st Century's executing the agreement.[10] According to 21st Century, a reasonable person would understand the purchase agreement, unsigned and sent under these circumstances, invited Mr. Smith to conclude the bargain by executing the document.

Because 21st Century sent the purchase agreement unsigned and with the "we'll sign after you" caveat, the Court cannot rule as a matter of law that Mr. Smith's executing the purchase agreement concluded the bargain. Although the document was titled "Purchasing *Agreement*"

---

[9] Defendants contend the parol evidence rule bars the Court from considering the effect on contract formation of their "[w]e'll sign after you" statement; they reason that considering it would vary or contradict the terms of the fully integrated written final agreement. *Defs.' Resp. to Pl.'s Mot. for Summ. J.* 6, ECF No. 45. But the parol evidence rule does not bar extrinsic evidence offered to establish whether or not a contract has been formed. *See* Restatement (Second) of Contracts § 214 (1981) ("Whether a writing has been adopted as an integrated agreement and, if so, whether the agreement is completely or partially integrated are questions determined by the court preliminary to . . . application of the parol evidence rule. [citation omitted] Writings do not prove themselves; ordinarily, if there is dispute, there must be testimony that there was a signature or other manifestation of assent.").

[10] Mr. Smith provides more than a mere scintilla of evidence that 21st Century used this language in order to reserve for itself the power of acceptance. Having the power of acceptance would give 21st Century more time to decide if it still desired to consummate a deal that it was already timid about in the first place.

(emphasis supplied) and provided clear and unambiguous terms, taking into account 21st Century's sending the document unsigned and with the "we'll sign after you" caveat, a reasonable person could view the document as a mere "step in the preliminary negotiation of terms." *See* Restatement (Second) of Contracts § 26; *id.* at comments a, e; *see also RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 141 (D.D.C. 2011) ("Contract formation commonly involves the use of unsigned documents that are not operative offers but merely steps in the preliminary negotiation of agreements."); *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 31 P.3d 921, 925 (Idaho 2001) (finding no offer when party presented unsigned contract for other party's signature and said she would "take it back for signature and mail [other party] a copy"). Even though Mr. Smith made no changes to the purchasing agreement before signing it, Defendants point out that he could have. Defs.' Memo. in Supp. of Mot. for Summ. J. at 9. That Defendants understood Mr. Smith could have made changes to the purchasing agreement indicates even they viewed the proposed agreement as a mere negotiating instrument or "working document," and not an operative offer. *RDP Techs., Inc.*, 800 F. Supp. 2d at 142 ("if [sending party] had regarded the proposed agency agreement as his company's formal, final offer to [receiving party], he would have been less amenable to the possibility of revisions being made"). Even when one party sends a *signed* document with clear and unambiguous terms, but also with words indicating an offer is not intended, this more often than not will be mere negotiation and not an offer. Restatement (Second) of Contracts § 26 at comment e. In this case, 21st Century had not even signed the document before sending it, further indicating the purchase agreement—as proposed by 21st Century—was not an offer. *Id.* As such, there remains a genuine issue of material fact over whether 21st Century's sending an unsigned purchase agreement with a caveat was an offer or simple negotiation. *See Boise Cascade Corp. v. Reliance Nat. Indem. Co.*, 99 F.Supp.2d 87 (D. Me. 2000) (finding genuine

issue of material fact as to whether contractor's job estimate sent to owner constituted an offer); *see also United States v. Meadors*, 753 F.2d 590, 599 (7th Cir. 1985) (holding summary judgment was inappropriate because whether signature on document was required, anticipated, requested, or relied upon in forming contract presented a factual question); *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296-97 (11th Cir. 1983) ("If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.").

### 2.   Two other formation theories support finding a contract as a matter of law

In the alternative, Defendants contend that even if Mr. Smith is correct, and the offer was made when Mr. Smith signed and sent the purchase agreement, 21st Century accepted the offer by performance, giving rise to a contract that made Mr. Smith a member of 21st Century. For two independent reasons, the Court concludes 21st Century is entitled to judgment as a matter of law that the Parties entered into a purchasing contract. First, the facts, even viewed in a light most favorable to Mr. Smith, show that 21st Century accepted by performance an offer Mr. Smith made by returning the partially executed purchase agreement. Second, assuming the offer was incapable of acceptance by performance, the conduct of the Parties indicates their mutual assent and that a contract was formed.

### a.   Contract Formation Theory: Acceptance by Performance

First, the Court considers Defendants' theory: whether 21st Century accepted by performance an offer made by Mr. Smith's signing and sending the proposed purchasing agreement. As an initial matter, the Court must determine whether or not such an offer could be accepted by performance. *See* Restatement (Second) of Contracts § 53(1) (Am. Law Inst. 1981) ("An offer can be accepted by the rendering of a performance only if the offer invites such an acceptance"). The manner of manifesting acceptance must comply with the terms of the offer. Restatement (Second) of Contracts §§ 50, 58 (1981). "An offer may invite or require acceptance

to be made by an affirmative answer in words, or by performing or refraining from performing a specified act, or may empower the offeree to make a selection of terms in [the] acceptance." Restatement (Second) of Contracts § 30(1) (1981).[11] "[O]rdinarily [the offeror] invites acceptance in any reasonable manner; in case of doubt, an offer is interpreted as inviting the offeree to choose between acceptance by promise and acceptance by performance." Restatement (Second) of Contracts § 62 cmt. a (1981) (citation omitted); *see also* Restatement (Second) of Contracts § 30(2) (1981). "In the absence of contrary indication, the question is whether acceptance by performance is reasonable under the circumstances." Restatement (Second) of Contracts § 53 (1981), comment a. But "[u]nless the performance will come to the offeror's attention in normal course, it is not likely to be a reasonable mode of acceptance." Restatement (Second) of Contracts § 54 (1981), comment b.

In this case, the offer Mr. Smith made by sending the executed purchase agreement to 21st century was silent on the manner of acceptance, and therefore could have been accepted by 21st Century's performance. The executed purchase agreement states it was contingent upon seventeen numbered obligations on the buyer or seller, and at the bottom, it called for signatures from Mr. Smith, Mr. Smith's LLC, and 21st Century. Purchase Agreement at 2. However, nowhere in the purchasing agreement does it say the parties intended to not be bound unless the document is fully executed. *See, e.g.*, *Schaller Tel. Co. v. Golden Sky Sys., Inc*., 139 F. Supp. 2d 1071, 1085 (N.D. Iowa 2001), *aff'd*, 298 F.3d 736 (8th Cir. 2002) (finding party had no intention to be bound in absence of written agreement, in part, because letters of interest stated that fully executed purchase

---

[11] The Restatement provides a useful illustration: "A sends a letter to B stating the terms of a proposed contract. At the end he writes, 'You can accept this offer only by signing on the dotted line below my own signature.' A replies by telegram, 'I accept your offer.' There is no contract." Restatement (Second) of Contracts § 30 cmt. a, illus. 1 (1981).

agreement was condition precedent to contract formation). Nor does any other evidence adduced indicate that Mr. Smith intended for 21st Century to accept his offer by promise *only*. Although the purchase agreement called for signatures from Mr. Smith and 21st Century, this on its own is insufficient evidence for the Court to rule as a matter of law that the half-executed purchasing agreement, as an offer from Mr. Smith, invited acceptance by promise and not performance, especially where, as here, the parties acted on the agreement by rendering part performances. *See Kemboi v. Ocwen Loan Servicing, LLC*, No. 11-36, 2012 WL 2571287, at *7 (N.D.W. Va. July 2, 2012) (citing *Herndon v. Meadows*, 103 S.E. 404 (1920); *Ely v. Phillips*, 109 S.E. 808 (1921)) (observing that under West Virginia law mutual assent, though generally manifested by the signature of all parties, may be shown where one party waives requiring signatures of other parties by accepting performance or by otherwise indicating that the signature of all parties is not a prerequisite to a valid contract). Additionally, per the terms of the purchasing agreement, Mr. Smith was notified of 21st Century's acceptance by performance when 21st Century sent Mr. Smith the wiring instructions for depositing the $200,000 membership payment. *See* Restatement (Second) of Contracts § 54 (1981), comment b. Therefore, Mr. Smith's offer placed no limit on the manner of acceptance, and 21st Century was permitted to exercise the power of acceptance by beginning performance.

Defendants are entitled to judgment as a matter of law on the issue of whether 21st Century accepted Mr. Smith's offer by performance. "[A]cceptance may be effected by silence accompanied by an act of the offeree which constitutes a performance of that requested by the offeror . . ." *Cook v. Heck's Inc.*, 342 S.E.2d 453, 458 (W. Va. 1986) (citing *First Nat. Bank of Gallipolis v. Marietta Mfg. Co.*, 153 S.E.2d 172, 176 (W. Va. 1967)); *see also* Restatement (Second) of Contracts § 50; *Pertee v. Goodyear Tire & Rubber Co.*, 861 F. Supp. 523, 526 (S.D.W.

-16-

Va. 1994), *aff'd sub nom. Pertee v. Goodyear Tire & Rubber Co.*, 67 F.3d 296 (4th Cir. 1995) (applying West Virginia law and ruling elevator company accepted counteroffers by performing elevator maintenance the counteroffers requested). Where an offer invites acceptance by either promise or performance, "the tender or beginning of the invited performance . . . is an acceptance by performance." Restatement (Second) of Contracts § 62(1). "Such an acceptance operates as a promise to render complete performance." *Id.* at § 62(2). "[R]endering of a performance does not constitute an acceptance if within a reasonable time the offeree exercises reasonable diligence to notify the offeror of non-acceptance." Restatement (Second) of Contracts § 53.

The Supreme Court of Appeals of West Virginia has several cases illustrating acceptance by performance. In *Cook v. Heck's Inc.*, the West Virginia Supreme Court of Appeals found acceptance by performance where employees, after receiving an offer in the form of an employee handbook's promise of job security, continued to work. *Cook*, 342 S.E.2d at 458. And when an offeree bank—in response to an offer seeking a loan—issued a loan to the offeror, this constituted acceptance by performance. *First Nat. Bank of Gallipolis*, 153 S.E.2d at 176. The Court looks to these two cases when deciding whether 21st Century accepted Mr. Smith's offer by performance.

In this case, 21st Century accepted Mr. Smith's offer by sending wiring instructions to Mr. Smith. In response to Mr. Smith's offer, made in the form of the partially executed purchasing agreement, 21st Century sent Mr. Smith wiring instructions per paragraph 1 of the purchasing agreement. Mr. Smith was notified of 21st Century's acceptance when he received the wiring instructions. And Mr. Smith responded to the acceptance by taking the first step in his own performance—wiring $200,000 to 21st Century. 21st Century's sending the wiring instructions operated as a promise to Mr. Smith that 21st Century would complete its performance in

accordance with the terms of the purchasing agreement.[12] No provision of the purchasing agreement required 21st Century to return a counter-signed copy of the agreement to Mr. Smith. Moreover, Mr. Smith waived any claim he had that a contract did not exist due to 21st Century's missing signature when he wired $200,000, an action indicating the parties did not contemplate complete execution of the purchasing agreement as a prerequisite to a valid contract. *See Herndon*, 103 S.E. at 405 ("[W]here a contract in writing is executed by only one of the parties, and the other party waives the execution by accepting performance, or by doing something under the contract which shows that the parties did not contemplate its complete execution as a prerequisite to a valid contract, it will be binding").[13]

### b. Contract Formation Theory: Mutual Assent

Second, the Court considers whether as a matter of law a contract was formed by the Parties' mutual assent, despite the absence of a fully executed purchasing agreement. That parties to a contract may have intended to prepare a written instrument does not prevent an otherwise enforceable verbal agreement from binding the parties. *Brown v. W. Maryland Ry. Co.*, 114 S.E. 457, 460 (W. Va. 1922); Restatement (Second) of Contracts § 27 (1979); Restatement (Second) of

---

[12] Once 21st Century sent the wiring instructions, it was obligated to render the remaining performance due under the purchasing agreement's terms, namely to split profits in accordance with paragraph 8 of the purchasing agreement, provide Mr. Smith with right of first refusal for sales of membership (*Purchasing Agreement* ¶ 12), not sell memberships for less than the price Mr. Smith paid (¶ 14), send Mr. Smith the paperwork showing his membership interest (¶ 16), start paperwork necessary for 21st Century to re-organize as an Ohio LLC (¶ 16), provide the reorganization paperwork to Mr. Smith within thirty days of the purchasing agreement taking effect (¶ 16), and once Mr. Smith's initial investment was recouped, to provide Mr. Smith with the same commission as other members (¶ 17).

[13] After Mr. Smith wired the money, 21st Century failed to perform on one term of the purchasing agreement when 21st Century neglected to send Mr. Smith paperwork showing his membership interest. However, at that point, 21st Century had already accepted the offer by performance, and at most the failure to send Mr. Smith this paperwork—as required by the purchasing agreement—amounts to a breach of the then-binding purchasing agreement.

Contracts § 27 cmt. c (1979) (listing factors to be considered in determining whether parties formed a contract prior to preparing a written memorial). But parties who do not intend to enter a binding contract without a writing will not be bound until a written agreement is prepared. *Brown v. W. Maryland Ry. Co.*, 114 S.E. 457, 457 (W. Va. 1922); *see also Hannah v. Tate*, No. 13-1328, 2014 WL 6607489, at *3 n.4 (W. Va. Nov. 21, 2014). Lastly, commentators have called for a practical approach to contract acceptance analysis, saying:

> assent to an offer . . . may either be expressed by words or evidenced by circumstances from which such assent may be inferred, such as the making of payments or the acceptance of benefits. Anything that amounts to a manifestation of a formed determination to accept, and is communicated or put in the proper way to be communicated to the party making the offer, completes a contract. . . This objective standard takes into account both what the offeree said, wrote, or did and the transactional context in which the offeree verbalized or acted."

17A Am. Jur. 2d *Contracts* § 91.

In this case, the evidence viewed most favorably to Mr. Smith shows as a matter of law that the Parties mutually assented to a binding agreement whereby Mr. Smith became a member of 21st Century. First, there has been no evidence produced that either Mr. Smith or 21st Century intended not to be bound until a written instrument was fully executed. Second, considering the factors provided by Comment C to Section 27 of the Restatement (Second) of Contracts, the Parties entered into a contract to sell an interest in 21st Century to Mr. Smith, despite the absence of a writing memorializing their agreement.[14] *See Hannah v. Tate*, No. 13-1328, 2014 WL 6607489,

---

[14] The Restatement (Second) of Contracts provides the following factors for determining whether a contract has been concluded despite the absence of a writing:

> [1] the extent to which express agreement has been reached on all the terms to be included, [2] whether the contract is of a type usually put in writing, [3] whether it needs a formal writing for its full expression, [4] whether it has few or many details, [5] whether the amount involved is large or small, [6] whether it is a common or

n.4 (W. Va. Nov. 21, 2014) (unpublished) (relying in part upon Restatement (Second) of Contracts § 27, cmt c to determine whether contract was formed despite absence of writing). Third, the conduct of the parties indicates they had an agreement. When Mr. Smith attempted to revoke his offer on February 7, 2014, both parties had already been performing under the purchasing agreement since November 1, 2013—roughly three and a half months. The performances rendered prior to February 7, 2014 included 21st Century re-organizing as an Ohio, LLC, Mr. Smith completing conversions for WVDOT, and 21st Century permitting Mr. Smith to keep profits from the WVDOT conversions. Additionally, there is no evidence the parties intended not to be bound until there was a completely executed purchase agreement. *Blair v. Dickinson*, 54 S.E.2d 828, 844

---

> unusual contract, [7] whether a standard form of contract is widely used in similar transactions, and [8] whether either party takes any action in preparation for performance during the negotiations. Such circumstances may be shown by oral testimony or by correspondence or other preliminary or partially complete writings.

Restatement (Second) of Contracts § 27. In this case, Section 27's contract formation factors weigh in favor of finding the Parties formed a contract despite the absence of a writing memorializing their agreement. First, the Parties agreed on each term of the purchasing agreement, as evidenced by their rendering performances due under the purchasing agreement. Second, a contract of this sort, one to sell membership in a corporation, is normally put in writing. Third, a contract to sell membership in a corporation need not be put in writing for its full expression, since such a deal is simple and entails, at a minimum, transferring money in exchange for an interest in a corporation. Fourth, the essential terms of the agreement in this case were relatively simple: Mr. Smith would transfer money and forgive debt, while 21st Century would grant him membership in the limited liability corporation to be formed in Ohio. Fifth, although the amount involved in this case, roughly $250,000, is large compared to some tiny purchasing transactions, such as buying a cup of coffee, the purchase price here is small compared to the price of an interest in other corporations, e.g., Starbucks. Sixth, a contract selling an interest in a corporation is a common contract, and this contract was not unusual in any way; its essential terms merely called for exchanging money for an interest. Seventh, there may be some standard form of contract widely used in corporate interest transfers, whether in West Virginia or Ohio, but none was produced in this case. Finally, both Parties in this case took several actions, not only in preparing for performance during negotiations, but also in performing under the terms of the purchasing agreement. Because the Parties both started performing under the purchasing agreement's essential terms, this last factor weighs heavily in favor of finding the Parties entered into a contract. In sum, all factors but the second weigh in favor of finding the parties formed a contract.

(W. Va. 1949) (ruling that whether parties intended to wait until writing to be bound must necessarily be determined from the circumstances in each case). Hence, the facts viewed in a light most favorable to Mr. Smith show the parties mutually assented to the purchasing agreement, even in the absence of a fully executed purchasing agreement.

### 3. The Court lacks subject matter jurisdiction over this action

To conclude, the evidence construed in Mr. Smith's favor shows as a matter of law that Mr. Smith and 21st Century formed a contract. On one hand, 21st Century accepted Mr. Smith's offer in the form of a signed purchase agreement by beginning performance, which gave rise to a purchasing contract between the parties. On the other hand, the Parties' conduct shows their mutual assent to the purchasing agreement, also giving rise to a contract. As such, the Court rules Mr. Smith and 21st Century formed a contract whereby Mr. Smith became a member of 21st Century. The existence of this contract not only precludes granting Mr. Smith restitution and finding unjust enrichment, but it also destroys this Court's diversity jurisdiction over the action because 21st Century is a citizen of every state where its members are citizens.[15] The Court has no other form of subject matter jurisdiction over this action. As such, the Court must dismiss Mr. Smith's Complaint and the Counterclaim for lack of subject matter jurisdiction.[16]

---

[15] For purposes of diversity jurisdiction, the Fourth Circuit has held that "the citizenship of a limited liability company . . . is determined by the citizenship of all of its members[.]" *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Gen. Tech Applications, Inc. v. Exro Ltda*., 388 F.3d 114, 121 (4th Cir. 2004)). By extension, a member of a limited liability company cannot bring an action based on diversity jurisdiction against the company because complete diversity would be lacking as a matter of course. *Id.*

[16] Additionally, the Court is without power to consider Mr. Smith's request that the Court pierce 21st Century's corporate veil and 21st Century's counterclaim that Mr. Smith breached a fiduciary duty he owed to 21st Century. As a matter of technicality, the Court cannot grant summary judgment on Count I of the Counterclaim, which asks the Court to declare that Mr. Smith and 21st Century entered into a sales contract, because the Court would lack jurisdiction to declare such, even though the Court dismisses the action on account of finding such a contract was formed.

## IV.    Conclusion

For the preceding reasons, the Court **DENIES** Plaintiff's motion for summary judgment on Complaint counts I, II, and IV and Counterclaim counts I and II. Treating Defendants' motion for summary judgment as a motion to dismiss for lack of subject matter jurisdiction, the Court **GRANTS** Defendants' motion and **DISMISSES** without prejudice Plaintiff's Complaint and Defendants' Counterclaim.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        April 14, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE